SAFETY NATIONAL CASUALTY COMPANY, Appellant–Plaintiff,

v.

CINERGY CORPORATION, Appellee–Defendant.

No. 32A05–0405–CV–269.

Court of Appeals of Indiana.

June 21, 2005.

James E. Ayers, Wernle Ristine & Ayers, Linden, Andrew K. Epting, Jr., Pratt–Thomas Epting & Walker, Charleston, SC, for Appellant.

George M. Plews, Donna Marron, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Judge.

Safety National Casualty Company ("Safety") appeals the trial court's order denying Safety's motion to stay the pro-

ceedings and to compel arbitration against Cinergy Corporation ("Cinergy"). Safety raises one issue, which we restate as whether the trial court's findings of fact and conclusions thereon denying Safety's motion to stay litigation and to compel arbitration were clearly erroneous. We reverse and remand.[1]

The relevant facts follow. Safety is an insurance company that issued excess umbrella insurance policies to utility companies, Cincinnati Gas & Electric ("CG & E") and Public Service Indiana ("PSI") during the 1980's. CG & E and PSI later merged and became Cinergy.[2] Safety issued policies UF 1181 IN and UF 1906 IN to PSI for the periods from October 31, 1983 to October 31, 1984 and from October 31, 1984 to October 31, 1985, respectively. Safety issued policies UF 1977 OH and UF 1980 OH to CG & E for the period from July 1, 1984 to July 1, 1985.[3] Each of the policies that Safety issued to PSI and CG & E contained an arbitration clause that provided:

**11.** **Arbitration:** As a condition precedent to any right of action under this Policy, any dispute arising out of this Policy shall be submitted to a decision of a board of arbitration. The board of arbitration will be composed of two arbitrators and an umpire, meeting in St. Louis, Missouri, unless otherwise agreed.

The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint 1 arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within four weeks after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two and the decision shall be made by drawing lots.

1. Safety filed a petition for an oral argument, which we hereby deny. Also, Cinergy moved to dismiss the appeal because it contends that Safety filed an incomplete Appellant's Appendix and misrepresented the terms of the policies. We note that Safety failed to include certain pleadings in its Appellant's Appendix, including the complaint that joined Safety as a plaintiff in this action and Cinergy's counterclaim. However, we deny Cinergy's motion.

2. The merger that resulted in the formation of Cinergy occurred in 1994. *See Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586, 589 (Ind.Ct.App.2003), *trans. denied.*

3. The parties disagree whether policy UF 1217 OH issued to CG & E for the period July 1, 1983 to July 1, 1984 and policy UF 1974 OH issued to CG & E for the period from July 1, 1984 to July 1, 1985 are involved in this litigation. Although the trial court does not reference policy UF 1974 OH in its order, Cinergy argues in its Appellee's Brief that that

policy is also at issue. Safety argues that policy UF 1974 OH was "canceled flat" and reissued as policy UF 1977 OH and that Cinergy did not include policy UF 1974 OH or policy UF 1217 OH in its counterclaim against Safety. Appellant's Brief at 11 n. 3; Appellant's Reply Brief at 4–5. Neither party included a copy of Cinergy's counterclaim in their appendices; therefore, we are unable to verify what policies under which Cinergy sought coverage from Safety. Cinergy's motion to enjoin arbitration and Safety's motion to compel arbitration refer to policies UF 1181 IN, UF 1906 IN, UF 1977 OH, and UF 1980 OH. Therefore, for purposes of this opinion, we will operate under the assumption that those four policies are the policies at issue here. Furthermore, because both parties agree that all the policies contained the same arbitration clause discussed below, our analysis would not change based on the inclusion of these other two policies.

The claimant shall submit its initial brief within twenty (20) days from appointment of the umpire. The respondent shall submit its brief within twenty (20) days after receipt of the claimant's brief and the claimant may submit a reply brief within ten (10) days after receipt of the respondent's brief.

The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed.

If more than one Insured is involved in the same dispute, all such Insureds shall constitute and act as one party for purposes of this Clause and communications shall be made by the Company to each of the Insureds constituting the one party; provided, however, that nothing therein shall impair the rights of such Insureds to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the Insureds under the terms of this Policy from several to joint.

Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

Appellant's Appendix at 165, 185, 196, 210, 336, 356, 367, 381; Appellee's Appendix at 44. Policies UF 1977 OH and UF 1980 OH also contained a "service of suit" endorsement, which provided:

The following Service of Suit Clause is not to become effective unless or until the Insured has notified this Company in each specific claim of its intention to sue.

Service of Suit Clause: It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be upon the highest one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this company's behalf in the event such a suit shall be instituted.

\* \* \* \* \*

Appellee's Appendix at 57, 62.

In March 2000, the United States filed suit against Cinergy in federal court ("federal lawsuit") and alleged that Cinergy had violated the Clean Air Act and had caused harm to persons and damage to the environment from excessive air emissions at four electricity-generating stations operat-

ed by Cinergy in Indiana and Ohio.[4] *See Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586, 589 (Ind.Ct.App. 2003), *trans. denied.* The complaint alleged that some of the violations dated back to the 1980's. The complaint sought for Cinergy to remedy the alleged violations by installing additional emission controls and "to take other appropriate actions to remedy, mitigate and off-set the harm to public health and the environment caused by the violations of the Clean Air Act alleged." Appellee's Appendix at 65. *See also Cinergy*, 785 N.E.2d at 589.

In July 2000, Cinergy, without mentioning a specific policy, notified Safety regarding the federal lawsuit and requested that Safety "commit to defend and indemnify" Cinergy in the action. Appellee's Appendix at 66. Safety did not respond to Cinergy's letter. In October 2000, Cinergy sent another letter to Safety to notify Safety of Cinergy's settlement negotiation status in the federal lawsuit. In its letter, Cinergy notified Safety that Cinergy faced upwards of $670,000,000 in costs and fees, and Cinergy requested that Safety "please contact [it] *immediately.*" Appellee's Appendix at 67. Safety did not respond to Cinergy's letter. Cinergy also sent letters to Safety in March 2001, December 2001, and February 2002, all of which updated Safety on the status of the federal lawsuit and requested that Safety defend and indemnify Cinergy. Safety did not respond to these letters.

Cinergy also notified its other insurance carriers, including St. Paul Surplus Lines Insurance Company ("St. Paul"), to inform them of its potential liability stemming from the federal lawsuit. In October 2000, St. Paul filed a complaint for declaratory judgment against Cinergy in Hendricks County. *See Cinergy*, 785 N.E.2d at 589. Cinergy filed an answer and counterclaim against St. Paul. *Id.* On December 31, 2001, the Hendricks County trial court entered a case management order and allowed the parties until March 31, 2002 to add parties and amend the pleadings without leave of the court. *Id.*

On February 15, 2002, Cinergy filed a complaint for declaratory judgment and damages in Marion County and named twenty-two of its insurers, including Safety and St. Paul, as defendants.[5] *Id.* Shortly thereafter, Cinergy filed a motion with the Hendricks County trial court to stay or dismiss the Hendricks County action, and the Hendricks County trial court denied that motion. *Id.* at 590.

On March 5, 2002, St. Paul amended its Hendricks County declaratory judgment complaint by adding Safety and the other twenty insurers named as insurer-defendants in Cinergy's Marion County action as "Additional Plaintiff Insurers." *Id.* at 590. Cinergy then moved the Hendricks County trial court to dismiss St. Paul's amended complaint, and St. Paul moved the Marion County trial court to dismiss Cinergy's Marion County action. *Id.*

In April 2002, Safety sent Cinergy a letter demanding arbitration pursuant to policies UF 1906 IN, UF 1181 IN, UF 1977 OH, UF 1980 OH, and Safety filed a motion to stay litigation and compel arbitration in the Marion County action. Cinergy opposed the arbitration but agreed to begin the process for choosing arbitrators and an umpire without waiving its right to object to arbitration.

---

4. The States of New York, New Jersey, and Connecticut, as well as two environmental groups, later intervened as plaintiffs in the federal lawsuit against Cinergy.

5. For the complete list of the twenty-two insurers, *see Cinergy*, 785 N.E.2d at 589 n. 3.

In May 2002, the Marion County trial court granted St. Paul's motion to dismiss, and in June 2002, the Hendricks County trial court denied Cinergy's motion to dismiss. *Id.* Cinergy appealed both the Hendricks County and Marion County rulings, and we affirmed both trial courts' rulings. *Id.* at 597.

■ In September 2002, Safety filed a motion to dismiss itself as a plaintiff in the Hendricks County litigation on the grounds that the insurance policies issued to Cinergy contained arbitration provisions and that arbitration panel selection process was underway. In October 2002, Cinergy filed a motion to enjoin arbitration, and thereafter, Safety filed a motion opposing Cinergy's motion. In December 2003, Safety filed a motion to stay the proceedings and to compel arbitration. After holding a hearing on the three motions, the trial court granted Cinergy's motion to enjoin arbitration, denied Safety's motion to dismiss and motion to stay litigation and to compel arbitration, and entered an order,[6] which provides:

\* \* \* \* \*

## II. *The Facts*

Plaintiff St. Paul Surplus Lines Insurance Company ("St.Paul") filed this coverage action against Cinergy on October 31, 2000. On February 15, 2002, Cinergy filed suit against Safety Mutual and twenty-two other insurers, in the Marion County Superior Court ("Marion County Action"). On March 5, 2002, St. Paul joined Safety Mutual and its co-defendants in the Marion County Action as Plaintiffs in this action. In general terms, the two lawsuits both sought clarification as to whether the insurance policies the Plaintiffs issued to Cinergy cover claims asserted against Cinergy by the U.S. Government, the States of New Jersey, New York and Connecticut, and two environmental groups in the action captioned *United States of America v. Cinergy Corporation, PSI Energy Incorporated, Cincinnati Gas & Electric Company,* Cause No. IP99–1693 C–M/S ("the Underlying Action"). The Indiana Court of Appeals resolved the dispute as to which coverage action would proceed by affirming this Court's denial of Cinergy's motion to dismiss this action in favor of the Marion County Action.

Safety Mutual issued two excess liability policies to PSI, Energy, Inc. (Policies UF1181IN and UF1906IN) and three excess liability policies to The Cincinnati Gas & Electric Company (Policies UF1977OH and UF1980OH and Policy UF1217OH). Collectively these policies provide $20 million in excess liability coverage for certain periods during 1983–1984 and 1984–1985. Safety Mutual's policies "follow form" to the underlying policies. This means that the Safety Mutual polic[i]es incorporate the terms of the policies with lower coverage limits for the same policy period to the extent that the terms of the underlying policies do not conflict with the Safety Mutual policies.

Cinergy first gave notice to Safety Mutual regarding the Underlying Action

6. We note that Safety filed a request for special findings under Ind. Trial Rule 52, and the trial court allowed the parties to submit proposed findings of fact and conclusions thereon. The trial court indicated that it had adopted Cinergy's proposed findings and conclusions and thereafter entered it as its own order. Although it is not prohibited to adopt a party's proposed order verbatim, this practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court. *See Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 273 n. 1 (Ind.2003); *Prowell v. State,* 741 N.E.2d 704, 708–09 (Ind.2001).

by its letter dated July 17, 2000. Cinergy provided further notice and information regarding the Underlying Action by letters dated October 13, 2000, March 14, 2001, December 17, 2001 and February 2, 2002. Cinergy's letters requested coverage and input from Safety Mutual about a possible settlement with the United States. Safety Mutual did not respond to any of these letters. It did not demand arbitration, seek additional information or acknowledge or deny its coverage obligation.

On April 17, 2002, nineteen months after Cinergy's initial notice letter, more than two months after Cinergy filed the Marion County Action[,] and more than a month after Safety Mutual was joined as a Plaintiff in this action, Safety Mutual sent a letter to Cinergy demanding arbitration pursuant to an arbitration clause in four of the policies that Safety Mutual had issued to Cinergy (Policies UF1906IN, UF1977OH, UF1181IN and UF1980OH). Cinergy objected to the arbitration on numerous grounds, and an exchange of correspondence ensued. At the same time this case advanced. Cinergy filed its Answer and Counterclaim, to the Amended Complaint, on July 1, 2002. In lieu of filing an Answer to the Counterclaim, Safety Mutual moved, on September 9, 2002, to dismiss itself as a party so that arbitration could proceed under the arbitration clauses in Policies UF1906IN, UF1977OH, UF1181IN and UF1980OH. On October 2, 2002, Cinergy moved to enjoin the arbitration that Safety Mutual sought.

On March 23, 2003, Cinergy moved to amend its counterclaim to include four policies issued by NBA Excess and Surplus Lines, Inc. ("NBA"). The NBA policies consist of subscriptions to portions of the policies by certain insurers, including Safety Mutual. One of these policies, ABN 10025, denotes Safety Mu-

tual's participation in coverage issued to Defendant The Cincinnati Gas & Electric Company for the 1983–1984 policy period. Cinergy had not been able to locate the corresponding Safety Mutual policy in its records. Even though it apparently had this fifth policy (Policy UF1217OH) in its files, Safety Mutual's motion for a stay and to compel arbitration filed on December 23, 2003, did not seek arbitration pursuant to Policy UF1217OH. Safety Mutual first tendered this fifth policy to Cinergy and to the Court at the hearing on January 6, 2004.

Safety Mutual's policies contain the following arbitration clause:

**11. Arbitration:** As a condition precedent to any right of action under this Policy, any dispute arising out of this Policy shall be submitted to a decision of a board of arbitration. The board of arbitration will be composed of two arbitrators and an umpire, meeting in St. Louis, Missouri, unless otherwise agreed.

The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint 1 arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within four weeks after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two and the decision shall be made by drawing lots.

* * * * *

The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed.

Policies UF1980OH and UF1977OH also contain "Service of Suit" endorsements that state:

Service of Suit Clause: It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

The "Service of Suit" endorsements are present in the copies of Policies UF1980OH and UF1977OH attached [to] Cinergy's October 2, 2002 motion to enjoin arbitration. The endorsements are marked with the identifier "U–GP24(4/83)" which also is listed under "Item 7" of the declaration pages for these policies.

### III. *The Law*

Arbitration between Safety Mutual and Cinergy is not required here for six reasons. The first reason is the most practical one. Arbitration is not required here because the arbitration result would not bind the parties. Thus, arbitration would merely prolong rather than avoid litigation. Safety Mutual's arbitration clause does not state that the arbitration is binding or incorporate rules that make it binding. Based on these considerations, the Eighth Circuit Court of Appeals recently concluded, in a case decided under the Federal Arbitration Act ("FAA"), that the result of an arbitration conducted pursuant to this same clause in another Safety Mutual policy was not enforceable. *In re Arbitration Between Dow Corning Corporation v. Safety National Casualty Corporation,* 335 F.3d 742, 746 (8th Cir. 2003), *rehearing and rehearing en banc denied* (2003)[, *cert. denied,* 540 U.S. 1219, 124 S.Ct. 1507 [158 L.Ed.2d 154] (2004), *reh'g denied*].[ ] The Eight[h] Circuit noted the "pro-insurer tilt" contemplated by Safety Mutual's arbitration procedure and commented that "[a]n insured (other than another insurance company) is unlikely to agree that the results of such a proceeding will be binding, that is judicially unreviewable on the merits under the FAA." *Id.*

The fact that the Indiana Arbitration Act not the FAA governs here does not change the result. The Indiana statute confirms that the required procedure under Safety Mutual's arbitration clause cannot bind the parties. Ind.Code § 34–57–1–17. This statute precludes entry of judgment on an arbitration award where the award or umpirage was obtained by "partiality or other undue means." In addition to the "decidedly pro-insurer 'tilt' " noted by the Eight[h] Circuit resulting from the requirement that the umpires by "active or retired, disinterested officials of insurance or reinsurance companies," *see Dow Corning,* 335 F.3d at 746, Safety Mutual's arbitration procedure ultimately rests on a drawing of lots to determine which party gets to select the umpire with the tie-breaking vote. If the arbitrators selected by Safety Mutual and Cinergy cannot

agree on a third umpire—an inevitability where $20 million in liability coverage is at stake—they must draw lots to determine which party would select the third umpire. This virtually assures a biased outcome, depending on who gets the long straw. This "partiality" and "undue means" make the result unenforceable under Ind.Code § 34–57–1–17. Because the arbitration required by Safety Mutual's policies would not bind the parties and inevitably will be· rejected by the losing party, leading to still more litigation, the strong public policy of avoiding litigation that generally supports enforcement of arbitration provisions in commercial contracts is not present here.

The second reason that arbitration is not required here is that Safety Mutual has waived any right to require arbitration. It waived arbitration by failing even to respond to Cinergy's five notice letters dated July 17, 2000, October 13, 2000, March 14, 2001, December 17, 2001 and February 1, 2002. Safety Mutual only first sought arbitration by its letter dated April 17, 2002, nineteen months after Cinergy's initial notice, more than 2 months after Cinergy filed the Marion County Action and more than a month after Safety Mutual became a Plaintiff in this action. Safety Mutual waited twenty[-]one more months to file, on December 23, 2003, a motion to stay this action as to Safety Mutual and to compel arbitration. Even then, Safety Mutual sought arbitration under only four of its policies even though a month later Safety Mutual tendered and asked for arbitration pursuant to a fifth policy that it had issued to Cinergy. Cinergy's request for arbitration under this fifth policy followed Cinergy's initial notice to Safety Mutual by three and a half years.

It is well established that conduct inconsistent with an intent to enforce an arbitration provision waives compliance with a contract's arbitration provision. *See e.g. Aetna Casualty and Surety Co. v. Dalson*, 421 N.E.2d 691 (Ind.Ct.App. 1981) (Arbitration waived where the plaintiff filed suit before seeking arbitration); *McNall v. Farmers Insurance Group*, 181 Ind.App. 501, 392 N.E.2d 520 (Ind.Ct.App.1979) (Arbitration waived where the defendant denied coverage and first sought arbitration after coverage litigation was filed)[, *trans. denied*]; *Hammes v. Aamco Transmission[s], Inc. et al.*, 33 F.3d 774 (7th Cir.1994) (Arbitration waived where the defendant seeking arbitration had authorized a co-defendant to sue the plaintiff)[, *reh'g denied and suggestion for reh'g en banc denied*]; *St. Mary's Medical Ct. v. Disco Alum. Products*, 969 F.2d 585 (7th Cir.1992) (Arbitration waived where the defendant seeking arbitration waited ten months after the claim was made to seek arbitration and participated in litigation). Cases where the arbitration demand preceded litigation, (*e.g. Kilkenney [Kilkenny] v. Mitchell Hurst Jacobs & Dick*, 733 N.E.2d 984 (Ind.Ct.App.2000)[, *reh'g denied, trans. denied*] ), or where a defendant's arbitration demand followed litigation, (*e.g. Mid–America Surgery Ctr., LLC v. Schooler*, 719 N.E.2d 1267, 1269 (Ind.Ct.App.1999); *Underwriting Members of Lloyds of London v. United Home Life Ins. Co.*, 549 N.E.2d 67 (Ind. Ct.App.1990)[, *adopted by* 563 N.E.2d 609 (Ind.1990) ] ) are fundamentally different from this case where the party making the post-litigation demand for arbitration is a plaintiff that received notice of the claim long before litigation was filed. Safety Mutual's failure to respond to Cinergy's five notice letters, its delay in seeking and in moving to

compel arbitration once litigation was filed and its acquiescence to its Plaintiff status in this action evoke a waiver of arbitration here.

The third reason arbitration should not be required is that Safety Mutual's arbitration clause violates the statutes of Safety Mutual's home state of Missouri. Insurance regulation is left almost entirely to state law. Safety Mutual is headquartered and domiciled in Missouri and is subject to regulation under Missouri law. Missouri statutory requirements regarding the content and format of contracts that contain arbitration provisions should be respected and enforced by Indiana courts. *Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329, 1333 (Ind.Ct.App.1991)[, *trans. denied, cert. denied,* 506 U.S. 818, 113 S.Ct. 61 [121 L.Ed.2d 29] (1992) ]. Even where a dispute is subject to the FAA, "courts generally apply state law to the issue of whether the parties agreed to arbitrate their claims." *MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.*, 785 N.E.2d 632, 637 (Ind. Ct.App.2003), *transfer granted* (2003).

Under Missouri Revised Statutes, Title 28, § 435.350, insurance policies cannot contain binding arbitration provisions. Even if such a clause was permissible in an insurance policy, Missouri Revised Statutes, Title 28, § 435.460 requires contracts with arbitration provisions to "include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read[s] substantially as follows[:] 'THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.[']'" Safety Mutual's policies contain no such wording. Because Safety Mutual's policies violate its own state's laws, both substantively and in form, its arbitration clause is unenforceable.

The fourth reason that precludes arbitration between Cinergy and Safety Mutual arises from the "Service of Suit" endorsements present in two of Safety Mutual's policies, Policies UF1980OH and UF1877OH. The endorsements, which modify the policies to which the endorsements are added (*see Travelers Indemnity Company v. Armstrong*, 422 [442] N.E.2d 349, 354 (Ind.1982)), state that Safety Mutual will "at the request of the Insured, submit to the jurisdiction of any Court of Competent jurisdiction within the United States." Such a suit has been commenced here. The "Service of Suit" endorsement overrides the arbitration clause. At a minimum, the arbitration clause and "Service of Suit" endorsements cause Safety Mutual's policies to be ambiguous as to whether arbitration is required. Ambiguity in an insurance policy is resolved in favor of the policyholder. *American State[s] Insurance Company v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996), *rehearing denied* (1996); *Eli Lilly and Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). Any reasonable construction that supports the policyholder's position must be enforced as a matter of law. *Lilly*, 482 N.E.2d at 471. It is reasonable to interpret Safety Mutual's "Service of Suit" endorsements as controlling, especially against a belated attempt to enforce an unlawful arbitration clause against a policyholder which already has commenced litigation.

*Lloyds v. United Home Life Ins. Co.*, 549 N.E.2d 67 (Ind.Ct.App.1990)[, *adopted by* 563 N.E.2d 609 (Ind.1990) ], which required arbitration pursuant to a reinsurance contract that contained both an arbitration and a service of suit requirement, does not control here, for two reasons. First, the contract in

*Lloyds* was between two insurers, and thus was not evaluated under the policyholder-friendly rules of policy construction that Indiana's appellate decisions require. Second, the reasoning in *Lloyds* is inconsistent with that of *Showboat Marina Casino Partnership*, 790 N.E.2d 595, 596 (Ind.Ct.App.2003), where the Court of Appeals more recently held that a contract containing an arbitration provision in addition to a requirement that disputes would be resolved by a court of competent jurisdiction in Indiana was ambiguous. That ambiguity was resolved against arbitration in *Showboat*. Arbitration likewise will not be required here.

The fifth reason why arbitration will not be required is because arbitration of coverage issues under the Safety Mutual policies is intertwined with resolution of the same issues in other policies which do not have arbitration clauses. These common issues will be resolved by this Court. Safety Mutual's policies "follow form" to underlying policies, which means that they incorporate the terms of the policies with lower coverage limits for the same policy period. Safety Mutual's arbitration clause states only that it applies to "any dispute arising out of this Policy." There is no statement that a dispute arising out of Safety Mutual's policies and policies issued by other insurers will be arbitrated. This case does not involve just Safety Mutual's policies. Indiana law provides that "[p]arties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Mislenkov et al., v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001).

The *Mislenkov* court refused arbitration where the dispute at hand involved an entity not subject to the agreement to arbitrate and conduct that took place before the agreement that contained the arbitration agreement took effect. *Id.,* pp. 289–290. Here the meaning of terms in the underlying policies will be litigated in this case and those holdings should flow up into Safety Mutual's policies which "follow form" to the underlying policies. There was no agreement to arbitrate any questions regarding other policies. At a minimum, Safety Mutual's arbitration clause is ambiguous on whether questions affecting the meaning of other policies are to be arbitrated. Ambiguous terms and provisions in insurance policies are strictly construed against the insurer because "the insurer drafts the policy and foists its terms upon the consumer." *Kiger,* 662 N.E.2d at 947.

The sixth and final reason why the Court rejects Safety Mutual's demand for arbitration rises from the fact that the construction of the other Plaintiffs' policies affects the construction of Safety Mutual's policies. Court[s] in other jurisdictions recognize the need for a balancing of interests when arbitration of a dispute presents a risk of inconsistent rulings between a proposed arbitration and ongoing litigation. *County of Jefferson, Iowa v. Barton–Douglas Contractors, Inc.,* 282 N.W.2d 155 (Iowa 1979); *Prestressed Concrete Inc. v. Adolfson & Peterson, Inc.* [308 Minn. 20], 240 N.W.2d 551 (1976). "Whipsaw" can occur, for example, when a court interpreting a policy in Year 1 finds coverage under the policy terms but holds that the triggering occurrence took place in Year 2. An arbitration for a Year 2 policy could hold that there is coverage under the Year 2 policy, but the triggering occurrence took place in Year 1. The result is two findings of coverage, but no recovery by the policy-

holder because of the conflicting occurrence determinations. That is why it is important that insurance policies be construed in one action, and not in potentially inconsistent proceedings.

The risk that the policyholder would be deprived of insurance coverage by unfair "whipsaw" was the central reason why an Indiana federal district court recently denied arbitration in another Indiana environmental insurance coverage dispute. *Reliance Insurance Company of Illinois v. Raybestos Products Company et al.*, Cause No. IP 97–27–C–Y/K (February 11, 2003) (appeal pending).[7] In *Reliance*, the policyholder sued various insurers for coverage of costs arising from a chemical release in Crawfordsville, Indiana. Some but not all of the insurers' policies contained arbitration provisions. The U.S. District Court held, pursuant to the FAA, that the action should not be stayed pending arbitration. The court noted that the policyholder's "strongest argument is that to allow this case to go to arbitration will most likely result in inconsistent and unfair results." Slip opinion, p. 5. Citing *Schlumberger Indus., Inc. v. National Surety Corp.*, 36 F.3d 1274, 1286 (4th Cir.1994), the *Reliance* court held that "[t]his potential for inconsistent results should be avoided by a single comprehensive action whenever possible." Slip opinion, p. 5.

Federal and Indiana cases that Safety Mutual has cited for the general proposition that arbitration is favored for commercial disputes (*e.g. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *We Care Hair Development, Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1990 [1999] ); *Chesterfield Management, Inc. v. Cook*, 655 N.E.2d 98, 102 (Ind.Ct. App.1996)[, *reh'g denied, trans. denied*]; *Mid–America Surgery, Ctr. LLC v. Schooler*, 719 N.E.2d 1267, 1269 (Ind.Ct. App.1999)) are inapposite. None of these cases addresses a coverage dispute between an insurer and a policyholder. As such, the cases do not address whether multiple insurers' policies, which in most cases contain comparable policy terms, some with common policy periods and other with different policy periods, all provide coverage for an environmental claim that took place over a period of years. The Eight[h] circuit, in *Dow Corning*, recently noted that "[t]hough federal policy favors arbitration, and that normally means binding arbitration, we know of no federal policy favoring binding arbitration of insurance coverage disputes." The general preference for arbitration noted in *Moses H. Cone* and related federal and Indiana cases does not support or require arbitration between Cinergy and Safety Mutual here.

## ORDER

For the six independent reasons stated above, arbitration between Cinergy and Safety Mutual is not warranted and will not be required. The Court now ORDERS that Safety Mutual's "Motion to Dismiss Itself as a Party" is DENIED, Cinergy's "Motion to Enjoin Arbitration" is GRANTED, and Safety Mutual's "Motion for Order for Stay of

---

7. We note that a few months after the trial court entered this order denying Safety's motion to dismiss itself as a plaintiff and motion to compel arbitration, the Seventh Circuit reversed the district court's order refusing to compel arbitration. *See Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676 (7th Cir. 2004).

Proceedings as to Safety National Casualty Company and Application for an Order Compelling Arbitration of Cinergy's Claims" is DENIED.

Appellant's Appendix at 483–495 (footnote omitted).

The sole issue is whether the trial court's findings of fact and conclusions thereon denying Safety's motion to stay litigation and to compel arbitration were clearly erroneous. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind.1999).

Safety argues that the trial court erred by denying its motion to stay litigation and to compel arbitration. We review a trial court's denial of a motion to compel arbitration de novo. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.,* 790 N.E.2d 595, 597 (Ind.Ct.App. 2003). "Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements." *Bielfeldt v. Nims,* 805 N.E.2d 415, 417 (Ind.Ct.App. 2004), *reh'g denied, trans. denied; see also MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d 901, 905 (Ind.2004). A party seeking to compel arbitration must satisfy a two-pronged burden of proof. *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001). First, the party must demonstrate the existence of an enforceable agreement to arbitrate the dispute. *Id.* Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. *Id.* Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration. *Id.* (citing Ind.Code § 34–57–2–3(a)).

When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Showboat Marina,* 790 N.E.2d at 598; *Mislenkov,* 743 N.E.2d at 289. In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Mislenkov,* 743 N.E.2d at 289 (citing *St. John Sanitary Dist. v. Town of Schererville,* 621 N.E.2d 1160, 1162 (Ind.Ct.App.1993)). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Id.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Showboat Marina,* 790 N.E.2d at 597. Words used in a contract are to be given their usual and common meaning unless, from the

contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.*

Safety contends that trial court erred by concluding that: (A) arbitration was unnecessary because it would be nonbinding or would be obtained by partiality or other undue means; (B) Safety had waived its right to arbitration; (C) the service of suit endorsement precluded arbitration; (D) Missouri state law prevented the enforcement of Safety's arbitration agreement; and (E) arbitration was not necessary because Safety's coverage issues were intertwined with coverage obligations of other insurers and because Cinergy could be subject to conflicting results. We will address each of Safety's contentions in turn.

## A. *Nonbinding Arbitration and Partiality*

Safety argues that the trial court's conclusion that arbitration was unnecessary because it would be nonbinding or would be obtained by partiality or other undue means was clearly erroneous. The trial court cited to six reasons for denying Safety's motion to stay litigation and to compel arbitration. The first reason, which the trial court noted was "the most practical one," was that "[a]rbitration is not required here because the arbitration result would not bind the parties [and] would merely prolong rather than avoid litigation." Appellant's Appendix at 487. The trial court further concluded that "the strong public policy of avoiding litigation that generally supports enforcement of arbitration provisions in commercial contracts is not present here." *Id.* at 488.

In reaching its conclusion that the arbitration clause was nonbinding and unnecessary, the trial court relied on *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742 (8th Cir.2003), *reh'g and reh'g en banc denied, cert. denied,* 540 U.S. 1219,

124 S.Ct. 1507, 158 L.Ed.2d 154 (2004), *reh'g denied.* In *Dow,* Dow and Safety had engaged in arbitration regarding a coverage dispute pursuant to an arbitration clause contained in Safety's insurance policy issued to Dow. *Id.* at 744. The arbitration panel issued a decision in favor of Safety and declared that "its decision [was] binding on the parties." *Id.* Dow appealed and argued, among other things, that the arbitration panel exceeded its authority when it declared that its decision was binding. *Id.*

The Eighth Circuit reviewed the arbitration clause in Safety's policies issued to Dow, which is the same arbitration clause that Safety used in its policies with Cinergy. *Id.* at 745. The 8th Circuit noted that the arbitration clause did not include any language that the arbitration was "final and binding" and did not incorporate by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provided for binding arbitration. *Id.* The court stated that "[a]rbitration usually results in a final determination that is binding on the parties to the underlying dispute, but the parties may instead agree to nonbinding arbitration, in which case the arbitrators' decision is likely to be a precursor to further litigation on the merits of the dispute." *Id.*

The Eighth Circuit stated that the arbitration clause was "ambiguously silent" on whether the arbitration was to be binding and, thus, looked to the parties' intent. *Id.* at 746. The court noted that while evidence of custom and usage would have been relevant, neither party had submitted any such evidence. *Id.* The court further stated that "[t]hough federal policy favors arbitration, and that normally means binding arbitration, we know of no federal policy favoring *binding* arbitration of insurance coverage disputes." *Id.* Ultimately, the court held that Safety's excess liability

policies provided for "mandatory but non-binding arbitration." *Id.* The court, thus, concluded that the arbitrators had exceeded their authority by declaring the arbitration decision to be binding. *Id.* at 747. The court did not vacate the arbitration award but instead modified it by removing the offending declaration. *Id.*

 Here, Safety argues that the trial court erred by relying on *Dow* to support its conclusion that arbitration was unnecessary because the language of the arbitration clause "clearly states" that arbitration was a "condition precedent" to litigation. Appellant's Brief at 19. We agree.

 Contracts of insurance are governed by the same rules of construction as other contracts. *Bowers v. Kushnick,* 774 N.E.2d 884, 887 (Ind.2002). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* When we determine whether parties agreed to arbitrate, we will attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Showboat Marina,* 790 N.E.2d at 597. Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.*

 The arbitration clause contained in the policies that Safety issued to PSI and CG & E provided:

11. **Arbitration:** *As a condition precedent to any right of action* under this Policy, any dispute arising out of this Policy *shall* be submitted to a decision of a board of arbitration. The board of arbitration will be composed of two arbitrators and an umpire, meeting in St. Louis, Missouri, unless otherwise agreed.

\* \* \* \* \*

Appellant's Appendix at 165, 185, 196, 210, 336, 356, 367, 381; Appellee's Appendix at 44 (emphasis added). A condition precedent "is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." BLACK'S LAW DICTIONARY 293 (6th ed.1990). The plain language of the arbitration clause indicates that arbitration shall be performed before a party has a right to litigate. In addition, the disputed coverage issue arises out of the policy and concerns Safety's liability under its excess umbrella policies issued to Cinergy. Furthermore, "Indiana recognizes a strong policy favoring enforcement of arbitration agreements, and arbitration agreements will be interpreted in light of that policy." *Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 102 (Ind.Ct. App.1995) (citations omitted), *reh'g denied, trans. denied.* Given the language of the arbitration agreement and the policy favoring enforcement of arbitration, we must conclude that the trial court erred by concluding that the arbitration was unnecessary.[8] *See, e.g., Kendrick Mem'l Hosp.,*

8. Cinergy contends that Safety is collaterally estopped by the 8th Circuit's decision in *Dow* from arguing that any arbitration would be binding. We disagree. The Eighth Circuit's holding that the contract is ambiguously silent on binding arbitration is a legal conclusion about the policy language. A legal conclusion concerning policy language by a court from another jurisdiction does not estop a party from seeking a contrary conclusion in another jurisdiction. *See Indiana Dep't of Public Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993) (noting that "lower federal court decisions may be persuasive but have non-binding authority on state courts"), *reh'g denied.* There are many instances where policy language is interpreted differently in different jurisdictions. We need not decide at this point whether the language "any dispute arising out of this Policy shall be *submitted to a*

*Inc. v. Totten,* 408 N.E.2d 130, 135 (Ind.Ct. App.1980) (noting that parties by contract may specifically provide that arbitration procedures are a condition precedent to litigation); *see also* 6 C.J.S. *Arbitration* § 51 (2004) (providing that "[a]s a general rule, where the contract makes arbitration a condition precedent, compliance with a provision for the submission of disputes is necessary before an action may be brought on the contract").

 Safety also argues that the trial court erred by concluding that arbitration was unnecessary because partiality would occur in the process. Safety contends that the trial court made a "premature and preemptive determination" that "any award would be only partial and would have been obtained by undue means." Appellant's Brief at 20. We agree.

 In its order, the trial court concluded that any arbitration award would be the result of partiality and would be unenforceable under Ind.Code § 34–57–1–17 of the Indiana Arbitration Act because the umpire selection process as described in the arbitration clause in Safety's policy "virtually assure[d] a biased outcome." Appellant's Appendix at 488. Although not pointed out by the parties, we note that Ind.Code § 34–57–1–17 is not part of the Indiana Arbitration Act. Indiana's Uni-

form Arbitration Act is contained at Ind. Code § 34–57–2–1 to –22. *See* Ind.Code § 34–57–2–22; *Fort Wayne Educ. Ass'n v. Fort Wayne Cmty. Sch.,* 753 N.E.2d 672, 675 (Ind.Ct.App.2001). Nevertheless, like Ind.Code § 34–57–1–17, which allows a party to "show cause against the rendition of the judgment" of an arbitration award on the grounds that the award was obtained by "partiality" or "other undue means," Indiana's Uniform Arbitration Act does contain a section, Ind.Code § 34–57–2–13, which allows for the vacation of an arbitration award where "the award was procured by corruption or fraud" or where "there was evident partiality by an arbitrator[.]" *Compare* Ind.Code § 34–57–1–17(1) with Ind.Code § 34–57–2–13(a)(1), (2). However, the plain language of either statute allows a party to challenge the partiality of an arbitration award or arbitrator *after* arbitration has been conducted. It does not refer to an anticipatory challenge to a yet to be conducted arbitration. Therefore, we must conclude that the trial court erred by concluding that the arbitration was unnecessary because it would eventually lead to partiality.[9]

## B. *Waiver of Arbitration*

 Safety argues that the trial court erred by concluding that Safety had

*decision* of a board of arbitration" contemplates a binding decision. *See* Appellant's Appendix at 165, 185, 196, 210, 336, 356, 367, 381; Appellee's Appendix at 44 (emphasis added). However, we do note that the language of Ind.Code § 34–57–2–1 provides that "[a] written agreement to submit to arbitration is valid, and enforceable ...." Nevertheless, all we need decide now, and do, is that the policy requires arbitration before a legal action.

9. When concluding that any arbitration award would be the result of partiality and would be unenforceable, the trial court stated that the Indiana Arbitration Act, not the Federal Arbitration Act ("FAA"), governed. The FAA "applies to written arbitration provisions

contained in contracts involving interstate commerce" and "applies only if parties agree to arbitrate." *MPACT,* 802 N.E.2d at 904 (noting that because the parties to the project were from different states, the project involved interstate commerce and the FAA was applicable). Safety argues that the trial court erred by concluding that the FAA did not apply, but at the same time, it contends that the result would be the same under either Indiana law or the FAA in that the trial court should have compelled arbitration. Because we conclude that the trial court erred by making an anticipatory ruling, we need not specifically address whether the FAA or Indiana Arbitration Act applies.

waived its right to arbitration. "Although a written agreement to submit a dispute to arbitration is valid and enforceable, the right to require such arbitration may be waived by the parties." *Mid–America Surgery Center, L.L.C. v. Schooler*, 719 N.E.2d 1267, 1270 (Ind.Ct.App.1999) (citing *Shahan v. Brinegar*, 181 Ind.App. 39, 44–45, 390 N.E.2d 1036, 1041 (1979)). Such a waiver need not be in express terms and may be implied by the acts, omissions or conduct of the parties. *Id.* (citing *McNall v. Farmers Ins. Group*, 181 Ind.App. 501, 506, 392 N.E.2d 520, 523 (1979), *trans. denied*). Whether a party has waived the right to arbitration depends primarily upon whether that party has acted inconsistently with its right to arbitrate. *MPACT*, 802 N.E.2d at 910. Waiver is a question of fact under the circumstances of each case. *Id.* "In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Finlay Properties, Inc. v. Hoosier Contracting, LLC*, 802 N.E.2d 453, 455 (Ind.Ct.App.2003).

Here, the record reveals that between July 2000 and February 2002, Cinergy sent Safety five letters notifying Safety of the federal lawsuit filed against Cinergy by the U.S. government, updating Safety on Cinergy's settlement negotiation status in the federal lawsuit, and requesting Safety to defend and indemnify Cinergy. Safety did not respond to these letters.

In February 2002, Cinergy filed a complaint for declaratory judgment and damages in Marion County and named Safety and twenty-one of its insurers as defendants. *Cinergy*, 785 N.E.2d at 589. In March 2002, St. Paul amended its Hendricks County declaratory judgment complaint by adding Safety as an additional plaintiff insurer. *Id.* at 590. In April 2002, Safety sent Cinergy a letter demanding arbitration pursuant to its policies, and Safety filed a motion to compel arbitration with the Marion County trial court. Cinergy opposed the arbitration but agreed to begin the process for choosing arbitrators and an umpire without waiving its right to object to arbitration. In May 2002, the Marion County trial court dismissed Cinergy's complaint and action, and we later affirmed the trial court's ruling. *See Cinergy*, 785 N.E.2d at 590, 597.

In September 2002, Safety filed with the Hendricks County trial court a motion to dismiss itself as a plaintiff on the grounds that the insurance policies issued to Cinergy contained arbitration provisions and that arbitration panel selection process was underway. In October 2002, Cinergy filed a motion to enjoin arbitration, and thereafter, Safety filed a motion opposing Cinergy's motion. In late December 2003, Safety filed a motion to stay the proceedings and to compel arbitration.

Here, the trial court concluded that Safety's "failure to respond to Cinergy's five notice letters, its delay in seeking and in moving to compel arbitration once litigation was filed[,] and its acquiescence to its Plaintiff status in this action" were inconsistent with Safety's right to arbitrate, and, therefore, Safety had waived its right to compel arbitration. Appellant's Appendix at 490.

Safety argues that it did not waive its right to compel arbitration because it pursued arbitration, it did not actively participate in litigation, and its nonresponse to Cinergy's letters did not constitute a denial.

■ We agree that Safety's lack of response to Cinergy's letters did not consti-

tute a denial that resulted in a waiver of Safety's right to arbitrate. In finding that Safety had waived its right to arbitrate by failing to respond to Cinergy's letters, the trial court relied upon *McNall v. Farmers Ins. Group,* 181 Ind.App. 501, 392 N.E.2d 520 (1979), *trans. denied.* In *McNall,* we held that "where an insurer denies coverage under the policy until after suit is brought to determine coverage, the right to compel arbitration on issues subject to arbitration pursuant to the policy is waived." *Id.* at 524. However, unlike *McNall,* where the insurer explicitly denied coverage, here, Safety did not assert any such explicit or express denial. Instead, Safety failed to respond to Cinergy's letters. The trial court concluded that Safety's failure to respond to Cinergy's letters that it sent prior to the filing of the lawsuit equated to a denial of Cinergy's claims, and thus, a waiver of Safety's right to arbitrate. However, "[m]ere silence or inaction on the part of an insurer is not sufficient to constitute an express waiver." *Tate v. Secura Ins.,* 587 N.E.2d 665, 671 (Ind.1992) (citing *Protective Ins. Co. v. Coca–Cola Bottling Co.,* 423 N.E.2d 656, 661 (Ind.Ct.App.1981)). While we do not approve of Safety's failure to acknowledge Cinergy's letters, given the facts of this case, including the fact that Safety had issued excess umbrella policies that would not be implicated until after the primary and umbrella policies, we cannot conclude that Safety's silence equated to an express denial of coverage. Therefore, we must conclude that the trial court erred by concluding that Safety waived its right to arbitrate by failing to respond to Cinergy's letters. *See, e.g., Protective Ins.,* 423 N.E.2d at 661 (noting that "the failure of [the insurance company] to respond to the

demand to defend letter is not evidence that [the insurance company] intended to waive its right to deny coverage"); *see also MPACT,* 802 N.E.2d at 910 (holding that the issue of waiver requires an analysis of the specific facts in each case).

█ In addition, we agree that Safety did not act inconsistently with its right to arbitrate after litigation was filed. Shortly after Cinergy filed a complaint for declaratory judgment and damages against Safety in Marion County and after St. Paul amended its Hendricks County declaratory judgment complaint and added Safety as an additional plaintiff insurer, Safety sent Cinergy a letter demanding arbitration pursuant to its policies and filed a motion to compel arbitration with the Marion County trial court. Safety and Cinergy then began the process to choose arbitrators and an umpire over Cinergy's objection to arbitration. The first pleading that Safety filed in this case was its motion to dismiss itself as a plaintiff on the grounds that the insurance policies issued to Cinergy contained arbitration provisions and that arbitration panel selection process was underway. Thereafter, Cinergy filed its motion to enjoin arbitration, and Safety filed a motion opposing Cinergy's motion. The trial court set Safety's motion to dismiss and Cinergy's motion to enjoin for hearing, but the hearing was rescheduled at the request of the parties and was then delayed by the trial court until an opinion was issued in the consolidated appeal that Cinergy had pending before our court.[10] After we issued an opinion in Cinergy's appeal, the trial court re-set the hearing on Safety and Cinergy's motions. About one week prior to the hearing, Safety filed a motion to stay the proceedings and to

---

**10.** Cinergy's consolidated appeal was from the Marion County trial court's grant of St. Paul's motion to dismiss the Marion County action and the Hendricks County trial court's

denial of Cinergy's motion to dismiss the Hendricks County action. *See Cinergy,* 785 N.E.2d at 590.

compel arbitration. A review of all of Safety's actions after the commencement of litigation reveals that it did not participate in litigation and did not act inconsistently with its right to arbitrate. In fact, all of Safety's pleadings filed with the trial court were based upon asserting its right to arbitrate. Therefore, we conclude that the trial court erred by concluding that Safety waived its right to arbitrate. *See, e.g., MPACT*, 802 N.E.2d at 910–911 (finding no waiver because the party acted consistently with its right to arbitrate); *Kilkenny v. Mitchell Hurst Jacobs & Dick*, 733 N.E.2d 984, 987 (Ind.Ct.App.2000) (stating that "[t]his is clearly not a case where a request for arbitration was plead in the initial complaint and then not again asserted until discovery was complete or an unfavorable result on the individual claims was imminent"), *reh'g denied, trans. denied; Mid–America*, 719 N.E.2d at 1270–1271 (holding that the party did not waive its right to enforce the arbitration clause); *Underwriting Members of Lloyds of London v. United Home Life Ins., Co.*, 549 N.E.2d 67, 71 (Ind.Ct.App.1990) (finding no waiver because defendant "asserted its right to arbitrate throughout the proceedings"), *adopted by* 563 N.E.2d 609 (Ind.1990). *Cf. JKL Components Corp. v. Insul–Reps, Inc.*, 596 N.E.2d 945 (Ind.Ct. App.1992) (refusing to compel arbitration as appellant made no effort to specifically request arbitration at any time before appeal), *trans. denied; Aetna Cas. & Sur.*

*Co. v. Dalson*, 421 N.E.2d 691, 692–693 (Ind.Ct.App.1981) (holding plaintiffs had waived their right to arbitrate where they had consistently resisted arbitration and only when an unfavorable judgment was entered against them at trial did they seek to compel arbitration); *Shahan*, 181 Ind. App. at 45, 390 N.E.2d at 1041 (finding waiver where neither party formally requested the trial court to order arbitration until after the trial court had already construed the underlying agreement and made its award).

### C. Service of Suit Endorsements

 Safety argues that the trial court erred by concluding that the service of suit endorsements found in two of its policies overrode the arbitration clauses in all four of its policies. Policies UF 1977 OH and UF 1980 OH contained a "service of suit" endorsement, which provided: [11]

> The following Service of Suit Clause is not to become effective unless or until the Insured has notified this Company in each specific claim of its intention to sue.

> Service of Suit Clause: It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all

---

**11.** In Safety's Appellant's Brief and Reply Brief, it initially argued that none of the four policies at issue, UF 1181 IN, UF 1906 IN, UF 1977 OH, and UF 1980 OH, contained a service of suit endorsement. Safety then filed a Motion for Leave to Amend Briefs and to Correct the Record and stated that it had determined that policies UF 1977 OH and UF 1980 OH did indeed contain a service of suit endorsement. Thereafter, we granted Safety's motion to amend its brief and to correct the record. Safety has not filed an amended brief, but appears to be relying on the content of its motion to amend the brief. We direct Safety's attention to Ind. Appellate Rule 47, which provides that the party moving to amend its brief "shall either tender sufficient copies of an amended brief ... (the cover of which shall indicate that it is amended) with its motion or request permission to retrieve the original and all copies of the brief ... filed with the Clerk and substitute amended pages."

matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be upon the highest one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this company's behalf in the event such a suit shall be instituted.

\* \* \* \* \*

Appellee's Appendix at 57, 62. The trial court concluded the " 'Service of Suit' endorsement overr[o]de the arbitration clause" and that "[a]t a minimum, the arbitration clause and 'Service of Suit' endorsements cause[d] Safety Mutual's policies to be ambiguous as to whether arbitration is required" and that any ambiguity would be resolved in favor of Cinergy as policyholder. Appellant's Appendix at 491.

We find *Isp.com LLC v. Theising*, 805 N.E.2d 767 (Ind.2004), *reh'g denied*, instructive. In *Isp.com*, the parties' dispute was pending before a Hamilton County court. *Id.* at 771. Theising, who sought to avoid arbitration, noted that a Loan and Security Agreement included a forum selection clause and a provision to consent to jurisdiction in Marion County and argued that those provisions demonstrated the parties' intention not to arbitrate any dispute under the note or Loan and Security Agreement. *Id.* at 776. Our supreme court disagreed and noted:

> It is not uncommon to find both arbitration and forum selection clauses in agreements. Several considerations may lead to the inclusion of both. First, and obviously, arbitration may be waived by the parties. If they choose, they may prefer to litigate, but be required to do so in a designated forum.

*Id.* at 776–77 (citations omitted). The court accordingly found the forum selection clause and consent to jurisdiction provision did not reflect the parties' intent to undo their general agreement to arbitrate. *Id.*

■ Here, all four of the policies that Safety issued to Cinergy contained an arbitration clause and two of those four policies (i.e., policies UF 1977 OH, and UF 1980 OH that Safety issued to CG & E) contained a "service of suit" endorsement. "It is the general rule of law in our State that words, phrases, sentences, paragraphs and sections of a contract cannot be read alone." *MPACT*, 802 N.E.2d at 908 (italics omitted) (quoting *General Ins. Co. of Am. v. Hutchison*, 143 Ind.App. 250, 254, 239 N.E.2d 596, 598–99 (1968)). The entire contract must be read together and given meaning, if possible. *Mislenkov*, 743 N.E.2d at 290. As noted above, the plain language of the arbitration clause indicates that arbitration shall be performed before a party has right to litigate. *See supra* Part A. The service of suit endorsement addresses jurisdiction and service of process and does not demonstrate an "affirmative intention" to undo the required arbitration. *See Isp.com*, 805 N.E.2d at 776.

"[T]he mere existence of a provision addressing procedures outside arbitration does not necessarily demonstrate an 'affirmative intention ... to undo the arbitration covenant[.]'" *Blimpie Intern., Inc. v. Choi*, 822 N.E.2d 1091, 1095 (Ind.Ct.App. 2005) (quoting *Isp.com*, 805 N.E.2d at 776). Therefore, we conclude that the trial court's finding that the two service of suit endorsements overrode the arbitration clauses in all four policies was clearly erroneous.[12] *See, e.g., Isp.com*, 805 N.E.2d at 776–777; *Blimpie*, 822 N.E.2d at 1095–1096; *see also Lloyds of London*, 549 N.E.2d at 71 (noting that the service of suit provision did not preclude arbitration).

### D. *Missouri Law*

 Safety argues that the trial court erred by concluding that Missouri state law prevented the enforcement of Safety's arbitration agreement in Indiana. In denying Safety's motion to compel arbitration, the trial court concluded that because Safety was headquartered in Missouri, "Missouri statutory requirements regarding the content and format of contracts that contain arbitration provisions should be respected and enforced by Indiana courts." Appellant's Appendix at 490 (citing *Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329, 1333 (Ind.Ct.App.1991), *trans. denied, cert. denied*, 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992)).

Safety argues that the trial court's reliance on *Albright* is misplaced. We agree. In *Albright*, the agreements between the parties contained a choice of law clause, which provided that "[t]his agreement and its enforcement shall be governed by the laws of the State of Missouri ...." *Albright*, 571 N.E.2d at 1332. We noted that "the Supreme Court [had] held that state law was not pre-empted by the Federal Arbitration Act where the parties have agreed that their arbitration agreement will be governed by state law[,]" and thus, we applied Missouri law to our construction of the contracts. *Id.* at 1332–1333 (citation omitted).

Unlike *Albright*, here, the policies do not have a choice of law clause that dictates that Missouri law be applied. As stated above, when determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Showboat Marina*, 790 N.E.2d at 598; *Mislenkov*, 743 N.E.2d at 289. Cinergy is an Indiana resident, and this declaratory action is pending in an Indiana court. Therefore, we must conclude that the trial court erred by applying Missouri law in construing the policies at issue.[13]

---

**12.** We note that neither party made any argument or reference to the propriety of the trial court using the two Ohio service of suit endorsements to preclude arbitration in both the two Ohio and two Indiana policies.

**13.** We note that even if Missouri had been applicable, the FAA would have preempted such application. While the "FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration[,]" state law may be preempted to the extent that it actually conflicts with federal law. *MPACT*, 802 N.E.2d at 905. (citation omitted). In other words, state law may be preempted "to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotations and citation omitted). In cases where state statutes explicitly made certain arbitration clauses unenforceable or placed serious burdens on the enforceability of arbitration provisions, preemption has been found. *Id.* Here, the trial court's order relied upon two Missouri statutes, one of which provides that insurance policies cannot contain binding arbitration provisions, and the other that provides that any contract containing an arbitration provision must include a statement in capital letters that warns the parties: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY

E. *Intertwined Coverage Issues and Inconsistent Rulings*

 Safety argues that the trial court erred by concluding that arbitration was not required because coverage issues in Safety's policies were intertwined with coverage obligations of other insurers that do not have arbitration agreements and because Cinergy could be subject to inconsistent rulings. We agree.

The trial court concluded that arbitration was not required because "the meaning of terms in the underlying policies will be litigated in this case and those holdings should flow up into Safety Mutual's policies which 'follow form' [14] to the underlying policies" and that there would be a risk that Cinergy would be faced with inconsistent rulings between the proposed arbitration and the ongoing litigation. Appellant's Appendix at 492. In so ruling, the trial court relied in part upon *Reliance Insur. Co. v. Raybestos Prods. Co.*, Cause No. IP 97–27–C–Y/K (Feb. 11, 2003), which is an entry issued by the United States District Court for the Southern District of Indiana in which the district court denied two insurers' motion to compel arbitration because it would be unfair to force Raybestos to litigate and to arbitrate the same legal and factual issues with different parties. *Reliance Insur. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 679 (7th Cir.2004). However, after the trial court issued its order denying Safety's motion to compel arbitration, the Seventh Circuit reversed the district court's opinion upon which the trial court relied and remanded for the district court to issue an order compelling arbitration. *See id.* at 680. The 7th Circuit reasoned:

> Duplicative actions are not entirely avoidable in a complex economy where multiple party dealings are the rule, not the exception, and disputes do not necessarily arise in a neat, bipolar fashion.
>
> \* \* \* \* \*
>
> We are not unsympathetic to the concerns that motivated the district court's decision. Busy courts do not welcome the idea of duplicative proceedings, whether before several different judicial bodies, or before some courts and some arbitral bodies. But, opposed to that concern is the right of parties to agree to alternative methods of dispute resolution, and the strong message from the Supreme Court that these agreements must be honored. If there is to be a duplicative proceeding exception, it is for Congress to add it to the FAA; it is not for us to create because one party may have put itself in a bad position. Because arbitration is a creature of agreement, parties often find ways to minimize the risk of inconsistent results through contractual provisions that either provide an exception to the duty to arbitrate for multi-party situations, or otherwise to find ways to coordinate duplicative proceedings.
>
> In this case, however, Raybestos must live up to its bargain and arbitrate its claims against [the two insurers].

*Id.* at 679–680.

We agree with the Seventh Circuit's reasoning and find it applicable here. We

---

BE ENFORCED BY THE PARTIES." *See* MO. REV. STAT. §§ 435.350, 435.460. Because these statutes would place serious burdens on the enforceability of any arbitration provision, the FAA would have preempted application of Missouri law.

**14.** "It is well established in insurance law that 'a follow form excess policy incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy.'" *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 722 n. 16 (Ind.Ct.App.2004) (quoting Eric Holmes, 23 APPLEMAN ON INSURANCE 2D § 145.1 at 6 (2003)), *trans. denied.*

recognize that this is a multi-party case in which there are twenty-one other insurers, each of which potentially has issued multiple policies to Cinergy. However, here, we are dealing with Cinergy's policies with Safety, and these policies include an arbitration clause that requires arbitration prior to engaging in litigation. *See supra* Part A. An arbitration clause, like any other contract, binds the parties to the agreement. *Isp.com*, 805 N.E.2d at 774. "Indiana courts have a lengthy tradition of recognizing and respecting the freedom to contract[,]" and "[o]ur supreme court has consistently expressed its commitment to advancing the public policy supporting enforcement of contracts." *Zollman v. Geneva Leasing Assocs., Inc.*, 780 N.E.2d 387, 391 (Ind.Ct.App.2002) (citations omitted). In addition, Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Northwestern Mut. Life Ins. Co. v. Stinnett*, 698 N.E.2d 339, 343 (Ind.Ct.App.1998). *See also* Ind. Trial Rule 38(E) (recognizing parties' "right by contact or agreement to submit or to agree to submit controversies to arbitration .... "). Our paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of the agreement. Given that the policy calls for arbitration and that we must enforce the arbitration clause as written, we conclude that the trial court erred by denying Safety's motion to compel arbitration. *See, e.g., Lloyds of London*, 549 N.E.2d at 70 (noting that when issues exist that fall under the arbitration agreement, "it is better to compel arbitration on those issues and ... leave it up to the trial court to determine how much weight to give the arbitrators' findings"); *see also First Federal Sav. Bank of*

*Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind.1990) (noting that "[t]he proper posture for the court is to find and enforce the contract as it is written and leave the parties where it finds them").

For the foregoing reasons, we reverse the trial court's order denying Safety's motion to stay litigation and to compel arbitration and remand to the trial court to enter an order compelling arbitration.[15]

Reversed and remanded.

BAKER, J. and FRIEDLANDER, J. concur.

---

**15.** We note that when entering an order to compel arbitration, the trial court has "discretion to either stay or dismiss litigation based on the nature of the contested issues

that should first be submitted to arbitration." *Indiana CPA Society, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 752 (Ind.Ct.App.2002).