# BUCHANAN v. CAINE.

## [No. 8,356. Filed November 25, 1914.]

1. APPEAL.—*Review.—Conflicting Evidence.*—Where the evidence was conflicting as to each of the material issues involved, the verdict will not be disturbed on the ground of insufficient evidence, as the court does not weigh the evidence on appeal. p. 278.

2. SALES.—*Caveat Emptor.—Specific Chattels.*—Where, in the absence of fraud, there is a sale of specific chattels already existing which the buyer has inspected, or where the sale is one of definite existing chattels specifically described, the actual condition of which is open to inspection and alike ascertainable by either party, the rule of *caveat emptor* applies and admits of no exception or implied warranty. p. 280.

3. SALES.—*Caveat Emptor.—Chinaware to be Decorated by Seller. —Trial.—Instructions.*—The rule of *caveat emptor* does not apply as to a purchase of chinaware that is thereafter to be decorated by the seller in accordance with designs furnished by the purchaser, but an implied warranty exists at least as to the quality and fitness of the decorations, unless negatived by the terms of the contract; hence, in an action for the purchase price of a shipment of chinaware, where there was evidence that a portion of it was purchased under such arrangement, instructions in effect stating that the purchaser had no right of inspection on receipt of the goods unless the jury found that such right was given by the contract, were erroneous. p. 281.

4. APPEAL.—*Review.—Instructions.*—In an action for the purchase price of chinaware, where the right of the purchaser to inspect after receipt of the goods was one of the questions at issue, an instruction which in effect told the jury that an opportunity to inspect at the time of the purchase required the purchaser to inspect the goods then or take his chances and be bound to accept them on arrival regardless of their quality and fitness, and without regard to any contract which the evidence may have shown with reference thereto, was erroneous. p. 281.

5. PRINCIPAL AND AGENT.—*Special Agent.—Duty to Ascertain Authority.*—There may be circumstances under which a special agent has implied power to bind his principal, and it is only where such an agent attempts to bind his principal in the absence of circumstances giving him such implied power, that a duty of ascertaining the extent of his authority rests upon a party dealing with him. p. 282.

6. APPEAL.—*Review.—Instructions.—Assuming Facts.*—An instruction stating to what extent a special agent may bind his principal, and that "it therefore follows in this case", etc., assumes that

in the particular case the agency was special, and was therefore erroneous, since the character of the agency was a question of fact to be determined from all the evidence.   p. 283.

7. PRINCIPAL AND AGENT.—*Special Agent.*—A special agent is one having authority to perform one or more special acts with particular instructions or within restrictions necessarily implied from the act to be done.   p. 283.

8. TRIAL.—*Instructions.—Invading Province of Jury.*—An instruction which precludes the jury from finding on issues supported by conflicting evidence invades the province of the jury and is erroneous.   p. 284.

9. TRIAL.—*Instructions.*—In an action for the purchase price of goods sold, an instruction that if the jury found that plaintiff was entitled to interest, etc., was erroneous in leaving the question of interest, except the rate thereof, wholly to the judgment of the jury without indicating any time or event from which interest should be calculated.   p. 284.

From Superior Court of Marion County (82,877); *Clarence E. Weir,* Judge.

Action by Frank N. Caine against Robert N. Buchanan. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*James W. Noel* and *Frank R. Pixler,* for appellant.

*Bamberger & Fiebelman* and *Frank Schoenfield,* for appellee.

HOTTEL, C. J.—This controversy grew out of the shipment by appellee to appellant of two carloads of chinaware, and was begun by appellee filing in the court below a complaint in two paragraphs.   It the first paragraph he charged appellant with being indebted to him in the sum of $3,242.57, for goods, wares and merchandise shipped to appellant at his special instance and request as per a bill of particulars filed with and made a part of such paragraph.

The second paragraph is predicated on a verbal contract for the same merchandise, and alleged in substance that such contract was made at Akron, Ohio, on May 9, 1908, and partly reduced to writing, a copy of which is filed with such paragraph as an exhibit; that the figures set out in such

exhibit as to quantity of the particular items mentioned therein were approximate only and not exact, and that where no quantity was mentioned it was unknown, and appellant was to accept and pay for all that appellee had of such items; that at the time of making such contract a considerable quantity of said ware was plain and undecorated; that appellant desired it decorated by appellee in designs suggested at the time; that the sale was made on the basis of the goods as they were or should be when decorated; that thereafter on May 24, and June 3, 1909, the appellee delivered such merchandise to appellant amounting to $7,242.54, as per invoice, a copy of which is filed with and made a part of such paragraph; that appellant paid thereon $4,000; that $3,242.54 remained unpaid and was due, etc.

Appellant filed an answer in five paragraphs, viz., (1) a denial; (2) payment; (3) a special answer in which he, in effect, admitted that a verbal contract was entered into between him and appellee, a part of which was reduced to writing and correctly set out as an exhibit with appellee's second paragraph of complaint. It is then alleged in substance that where such exhibit names prices only and not quantity, the defendant was to receive and accept such goods shipped of that particular class as were satisfactory and in a salable condition; that appellant was engaged in selling chinaware at wholesale and purchased such goods for resale; that plaintiff had knowledge of such fact; that after making the contract appellee shipped to appellant at Indianapolis two carloads of various kinds of chinaware and merchandise; that it was impossible to assort and count such merchandise without unloading it; that said cars were unloaded by appellant and their contents taken to his place of business where such merchandise was assorted and counted; that appellant then found that large quantities of the goods invoiced were missing; that large quantities were in a defective, unsatisfactory and unsalable condition; that he immediately notified appellee of such facts and refused

to accept such shipments; that thereupon appellee sent his representative to appellant's place of business to adjust such matter, and he and appellant made a new agreement by the terms of which appellant's bookkeeper, Thomas Corbett, was to assort and count all goods contained in said shipments; that any goods found by him defective and unsalable should be set aside and stored by appellant subject to appellee's disposition, and if not removed promptly by appellee he was to pay appellant storage thereon and the goods found by said Corbett to be in a good and salable condition were to be accepted and paid for by appellant; that pursuant to such agreement Corbett assorted and counted said goods, an itemized statement of which is filed with and made a part of said paragraph of answer; that thereafter appellee directed appellant to ship various goods from said rejected stock to various parties which appellant did, such shipments amounting to approximately $300; that the remainder of said rejected goods is still in appellant's possession; that he has notified appellee on several occasions that he was holding such goods subject to his disposition and requested instructions with reference thereto; that appellee is indebted to appellant on account of storage on said goods at the rate of $40 a month since July 1, 1909; that prior to the completion of the count by Corbett, appellant had paid appellee $4,000 on said account; that such assortment and count of Corbett showed that appellant had received goods which were accepted amounting to only $3,547.66, and that appellant had overpaid appellee in the sum of $452.44; that appellant demanded of appellee payment for storage and a refund of the overpayment. Paragraphs four and five of the answer, allege a sale and assignment by appellee of his interest in said account and that he is not the real party in interest. Appellant also filed a counterclaim in which he set up substantially the same facts set up in his third paragraph of answer. A general denial was filed by appellee to said special answers and counterclaim.

A trial by jury resulted in a verdict and judgment for appellee for $3,242.57. Appellant's motion for a new trial was overruled and this ruling is assigned as error and relied on for reversal. Sixty-five grounds for a new trial are set out in this motion, many of which are discussed in appellant's brief and insisted on as presenting reversible error. The length to which this opinion would be extended by a presentation and discussion of each of said grounds forbids that we should do more than indicate those on which we think a disposition of the appeal may be safely rested.

The first ground of such motion challenges the sufficiency of the evidence to sustain the verdict. As to this ground it is sufficient to say that there was conflict in the evidence on each of the material issues tendered by the respective pleadings above indicated, and as this court will not weigh the evidence no reversible error is presented by such ground. Many of the other grounds of said motion relate to the giving of instructions. As before indicated appellant introduced evidence tending, at least, to support each of the controverted questions involved in the issues presented by the several pleadings above indicated. As applicable to the questions so presented by such issues and evidence the court gave the following instructions among others on the subject of appellant's duty of inspection of the merchandise shipped to him. "(5) In this case there is a controversy as to the terms of the contract entered into by the parties. The defendant contends that under the agreement as made, in those cases where no quantities of merchandise were named, in the written part of the contract, but only the prices given, the defendant was to accept and pay for only such goods shipped to him as should be in satisfactory and salable condition. If you should find from the evidence that this was one of the terms of the contract, then under the law the defendant would have the right to examine such parts of the property in question, after receipt by him, to ascertain whether the same were

in satisfactory and salable condition. But, if you should find that this was not one of the terms of the contract entered into by the parties, defendant would have no such right of examination."

"(6) One of the contentions of the defendant in this case is that at the time he entered into the contract in question he did not examine and did not have opportunity to examine the property in question. If you should find such to be the fact, then defendant would be, under the law, entitled to inspect the property upon its receipt by him, but if you should find that he did have an opportunity to inspect the same at the time of the purchase it would be wholly immaterial as to whether he in fact inspected it or in fact knew its condition. Under the law if he had the opportunity to know, it is sufficient."

"(7) If you should find from the evidence in this case that the plaintiff and defendant agreed upon the sale to the defendant by plaintiff of the merchandise described in the written part of the contract in question, and if you should find under the terms of the contract there was no agreement that any part of the property should be in satisfactory and salable condition, and if you should find that the plaintiff delivered the property at the place of delivery as named in the contract, and if you should find that the property was in existence at the time of the making of the contract and the defendant had the opportunity to examine the same, then you would be justified in rendering a verdict for the plaintiff, provided you should also find that no subsequent contract relating to the merchandise in question was entered into by the parties."

Without stating the particular objection which appellant makes to each particular instruction it is sufficient to say that the effect of appellant's contention is that these instructions are inapplicable to the facts of the case; that they, in effect, told the jury that appellant, on receipt of the merchandise, had no right of examination, except the contract

of purchase provided that he should pay for only such of the goods as were found to be in a satisfactory and salable condition; that all the evidence shows that at least one-half of the goods sold were undecorated and in an unfinished state, and that as to such goods the right of inspection would exist independent of contract, and that as to such goods the rule of *caveat emptor* should not have been applied.

2.   While there is some confusion in the authorities in their application of said rule, it seems to be well settled that, where, in the absence of fraud, there is a sale of specific chattels already existing which the buyer has inspected, or where the sale is one of definite existing chattels specifically described, the actual condition of which is open to inspection and alike ascertainable by either party, such rule applies and admits of no exception or implied warranty. *Bowman* v. *Clemmer* (1875), 50 Ind. 10, 12; *McAlroy* v. *Wright* (1865), 25 Ind. 22; *Bushman* v. *Taylor* (1891), 2 Ind. App. 12, 28 N. E. 97, 50 Am. St. 228; *Merchants', etc., Sav. Bank* v. *Fraze* (1893), 9 Ind. App. 161, 165, 36 N. E. 378, 53 Am. St. 341; *Postal* v. *Oard* (1890), 1 Ind. App. 252, 27 N. E. 584; *Springfield Shingle Co.* v. *Edgecomb Mill Co.* (1909), 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258, and annotated note; Benjamin, Sales (7th ed.) 645; 2 Mechem, Sales §§1311-1319.   However, the rule of *caveat emptor* has been considerably relaxed, and the doctrine of implied warranty given a much broader scope than it was formerly given.   *Oil-Well Supply Co.* v. *Watson* (1907), 168 Ind. 603, 608, 80 N. E. 157, 15 L. R. A. (N. S.) 868, and authorities cited.   ''The doctrine of *caveat emptor* rests upon the principle that the purchaser sees, or may see, and know what he buys; and not demanding an express warranty, it will be conclusively held that he was content to rely on his own judgment, and if the goods prove inferior in quality, the purchaser has no remedy but must bear the loss himself.   *Brantly* v. *Thomas* (1859), 22 Tex. 270, 73 Am. Dec. 264; 2 Kent, Comm. (14th ed.) *479,  But where

the purchaser has no opportunity to inspect the goods, and no knowledge of the quality, and no means of forming an opinion of his own with respect to the quality, the reason of the rule fails.'' See also *Springfield Shingle Co.* v. *Edgecomb Mill Co.,* annotations, *supra.*

The reason for the rule of *caveat emptor* and the exceptions thereto here suggested strongly tend to support appellant's contention, that as to those goods which were

3. undecorated the rule should not have been applied, unless the terms of the contract were such as to negative an implied warranty of the quality and fitness of such decorations for the purposes for which the ware so . decorated was sold. As to such goods the implied warranty would exist, at least as to the quality and fitness of the decorations. Of course, the parties might have contracted against the implied warranty as to such decorations; and appellee insists that they did, but this was a question of fact for the jury, and the court could not assume the existence of such a contract without encroaching upon the rights of the jury. The above instructions, especially Nos. 5 and 7, are open to the criticism that they in effect told the jury that appellant had no right of inspection as to any of the goods purchased unless it found that such right was given by appellant's contract with appellee, and such instructions were for this reason in conflict with the law as expressed in the cases above cited. Instruction No. 5 is open to the

4. further criticism that it, impliedly at least, assumes that appellant's contention that he was to accept such of the goods shipped as were satisfactory and in a salable condition, applied only to those articles of merchandise where the quantity was left blank in the original memorandum of purchase. There was evidence which showed that appellant claimed that goods were shipped that were not on the original memorandum, and that he asserted his right to reject such of those goods as were unsalable, as well as *all* the goods shipped under the contract.

Under instruction No. 6 an opportunity to inspect the goods at the time of purchase required appellant to inspect them then or take his chances and be bound to accept them on arrival regardless of their quality and fitness and regardless of any contract which the evidence may have shown with reference to such quality or fitness, and for this reason it was erroneous.

On the subject of agency the court gave the following instruction, among others: "(9) Under the law a special agent can bind his principal only to the extent that he has authority from such principal, unless such principal should ratify the unauthorized acts of such agent, which matter I shall speak of further on. It therefore follows in this case that if you should find that the defendant and John G. Ingalls entered into the contract at Indianapolis, as claimed by the defendant, before you can charge the plaintiff in any way with such agreement you must find that John G. Ingalls had authority from the plaintiff to make such contract, or if he did not in fact have such authority, then that the plaintiff subsequently ratified the action of said Ingalls in entering into such new contract, if you should find the same was entered into." It is insisted by appellant in effect that said instruction ignores the possibility of a liability of the principal arising from the acts of a special agent who acts within his apparent authority, but outside of his special instructions. This court in the recent case of *Wagner* v. *McCool* (1913), 52 Ind. App. 124, 135, 100 N. E. 395, in considering this question said: "The question in such cases seems to be, not 'what was the authority actually given', but, what was the party 'in dealing with the agent justified in believing the authority to be'. A rule which seems to be fundamental in the law of agency is stated by Mechem, Agency §§283, 284, as follows: It is well settled that 'the authority of the agent must depend, so far as it involves the right of innocent third persons, who have relied thereon, upon the *character* bestowed,

and not on the *instructions* given, or, in other words, the principal is bound to third persons who have relied thereon and in ignorance of any limitations or restrictions, by the *apparent* authority he has given to the agent, and not by the *actual* or *express* authority. * * * A principal is responsible, either when he has given to an agent sufficient authority, or, when he justifies a party dealing with his agent in believing that he has given to this agent this authority.' "

We recognize that the authorities make a distinction where the agency is a special one. "The law applicable to that class of persons known as special agents is no longer in doubt, and if we regard the alleged agent in this case as belonging to that class, then his rightful acts and authority in the premises to bind his principal would be circumscribed by the authority conferred upon him by his principal, and all other acts would be mere nullities so far as his principal is concerned. In such cases the general rule requires a party dealing with such agent, *in the absence of circumstances giving him implied power,* to ascertain the extent of his authority, and if he does not, he must abide the consequences." (Our italics.) *Brier* v. *Mankey* (1911), 47 Ind. App. 7, 13, 93 N. E. 672; Story, Agency (9th ed.) §126; 1 Clark & Skyles, Agency §242. The italicized part of the language quoted, clearly indicates that the courts recognize that even in the case of a special agent there may be circumstances which give him implied power, and that it is only in those cases where such special agent attempts to bind his principal *in the absence of circumstances giving him such implied power* that the duty of ascertaining the extent of the authority of such agent rests on the party dealing with him.

However, instruction No. 9 assumes that appellee

6. was a special agent. It first tells the jury to what extent a special agent may bind his principal and then says: "it therefore follows in this case", etc.,

7. impliedly at least assuming that Ingalls was only a special agent of appellant. "A special agent is one

who has authority to perform one or more special acts with
particular instructions or within restrictions necessarily im-
plied from the act to be done." *Davis* v. *Talbot* (1894),
137 Ind. 235, 238, 36 N. E. 1098. See, also, *Blackwell* v.
*Ketcham* (1876), 53 Ind. 184; *Cruzan* v. *Smith* (1872), 41
Ind. 288; *Berry* v. *Anderson* (1864), 22 Ind. 36; *Reitz* v.
*Martin* (1859), 12 Ind. 306, 74 Am. Dec. 215. The character
of the agency of Ingalls whether special or general was a
question of fact to be determined by the jury from all the
evidence in the case and not one to be assumed by the court.
Indeed, there was some evidence tending at least to prove
that Ingalls was interested as a principal or part owner of
said merchandise.

Objection is also made by appellant to instruction No. 25
given by the court. It reads as follows: "If you should
find for the plaintiff it will then be your duty to de-
termine upon the amount which he is entitled to
recover. Such amount would be based upon the con-
tract price of the goods, less such amount as you may
find has been paid thereon, and if you should deter-
mine that the plaintiff was entitled to recover in-
terest in addition, you would be justified in adding interest
at the rate of six per cent from the period during which
plaintiff in your judgment would be entitled to interest.
* * *." This instruction is erroneous for two reasons. It
had the effect of narrowing appellant's defense as to the
amount of recovery, in case the jury found for appellee, in
that it restricted any reduction from the contract price of
the goods shipped to *payments* alone, and ignored all other
defenses, on which there was evidence that might have led
the jury to believe that appellee was not entitled to recover
the full amount of the contract price of such goods. The
instruction also left the question of interest, except the
rate thereof, wholly to the *judgment* of the jury, indicating
no time or event from which it should be calculated. An
instruction which precludes the jury from finding on issues

supported by conflicting evidence invades the province of the jury and hence is erroneous. *Wright* v. *Wright* (1854), 5 Ind. 389; *Wagner* v. *Weyhe* (1905), 164 Ind. 177, 180, 73 N. E. 89, and cases cited. The verdict in this case was the exact amount of the contract price of the goods shipped less the payments made by appellant, indicating that the jury followed this last instruction.

As before indicated other instructions are objected to by appellant and other errors alleged to have occurred at the trial are presented in its brief; but as a reversal of the judgment below must result from those which we have already considered, we therefore deem it unnecessary to consider or determine such questions. In all probability they will not arise on a second trial of the case, and hence their discussion would be of doubtful value to either party.

For the errors in giving the instructions indicated the judgment is reversed, with instructions to the trial court to grant a new trial.

NOTE.—Reported in 106 N. E. 885. As to when the rule of *caveat emptor* is inapplicable in respect of sales, see 90 Am. Dec. 426. As to the effect of a sale with particular description of kind or quality, see 35 L. R. A. (N. S.) 258. See, also, under (1) 3 Cyc. 348; (2) 35 Cyc. 410, 403; (3) 35 Cyc. 397, 601; (4) 35 Cyc. 601; (5) 31 Cyc. 1341; Agency 2 C. J. §223; (6) 38 Cyc. 1657; (7) 31 Cyc. 1338; Agency 2 C. J. §221; (8) 38 Cyc. 1644; (9) 22 Cyc. 1581.