# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JERRY T. DROOK**
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOM TRISLER d/b/a | ) | |
| CANAL HOUSE ANTIQUES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1302-SC-192 |
| | ) | |
| CLAYTON L. CARTER, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable J. R. Heffelfinger, Judge
The Honorable Jennifer E. Newton, Magistrate
Cause No. 35D01-1207-SC-677

**September 30, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Tom Trisler (Trisler), d/b/a Canal House Antiques (Canal), appeals the trial court's order which required Trisler to issue a refund to the Appellee-Plaintiff, Clayton L. Carter (Carter).

We reverse.

## ISSUE

Trisler raises a single issue on appeal, which we restate as follows: Whether trial court erred in ordering Trisler to issue a refund to Carter.

## FACTS AND PROCEDURAL HISTORY

On November 19, 2011, Carter and his wife went to Canal in Wabash, Indiana. Carter purchased some tools, Christmas decorations, two chests of drawers, and a filing cabinet. When they were cleaning the items some time before Christmas, Carter and his wife found nails protruding through the back of one of the chest of drawers. They had purchased the chest of drawers for Carter's sister-in-law who was in a nursing home suffering from Alzheimer's. Upon realizing this, Carter called Trisler and asked if he could return the chest of drawers. Trisler agreed to the return but told Carter that he would issue him a store credit rather than a refund. Carter retuned the item on January 5, 2012. He looked around the store, found nothing he wanted, and demanded a cash refund which Trisler refused. There was nothing on the receipt nor was there any sign in the store stating that Canal would refund the purchase price of a returned item.

2

On July 18, 2012, Carter filed his Notice of Claim in Small Claims Court against Trisler alleging that he returned defective merchandise to Trisler's store and Trisler failed to give him a refund of the purchase price. On September 4, 2012, Trisler filed his Answer. On October 10, 2012, a bench trial was held. On December 26, 2012, the trial court entered judgment in favor of Carter. Specifically, the trial court ruled:

1. [Trisler] did not have a posted policy on the return of exchange items. [Carter] returned the chest of drawers in a reasonable amount of time. []

2. Judgment for [Carter] in the amount of $ 170.00 plus court costs of $ 92.00.

(Appellant's App. pp. 11-12).

Trisler now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Trisler contends that the trial court erred in entering judgment against him and in favor of Carter because there was no express or implied warranty requiring him to refund the purchase price. Trisler argues that "[t]he fact that the store owner had posted no signs regarding refunds or exchanges created no express or implied warranty either." (Appellant's Br. p. 4). Trisler further contends that his willingness to allow Carter to exchange and return the item for store credit did not give rise to a right to refuse store credit and demand a cash refund instead.

Under Indiana Small Claims Rule 11(A), judgments in small claims action are "subject to review as prescribed by relevant Indiana rules and statutes." *Trinity Homes,*

3

*LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006). In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Trial Rule 52(A); *Bennett v. Broderick*, 858 N.E.2d 1044, 1047 (Ind. Ct. App. 2006), *trans. denied*. A judgment is clearly erroneous when a review of the materials on appeal leaves us firmly convinced that a mistake has been made. *Barber v. Echo Lake Mobile Home Com.*, 759 N.E.2d 253, 255 (Ind. Ct. App. 2001). In our review, we presume that the trial court correctly applied the law, and we will not reweigh the evidence or determine the credibility of witnesses but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Lae v. Householder,* 789 N.E.2d 481, 483 (Ind. 2003)..

Lastly, we note that Carter did not file an appellee's brief. An appellee who does not respond to the appellant's allegations of error on appeal runs a considerable risk of reversal. *O.S. v. J.M.*, 436 N.E.2d 871, 873 (Ind. Ct. App. 1982). Where an appellee has not filed a brief on appeal, the appellant's brief need only demonstrate *prima facie* reversible error in order to justify a reversal. *Id.*

Here, Trisler argues that because there was no return policy, Carter was not entitled to a refund. Trisler's argument relies on Caveat Emptor, which literally means,

4

buyer beware. In support of his contention, Trisler solely quotes *Buchanan v. Caine*, 106 N.E. 885, 887 (Ind. Ct. App. 1914), where this court held that Caveat Emptor applies in a sale of specific chattel where there is absence of fraud. However, in *Vetor v. Shockey,* 414 N.E.2d 575, 576 (Ind. Ct. App. 1980), we noted that:

> Under the common law tradition, the doctrine of caveat emptor governed the purchase of real estate. The theory underlying caveat emptor was that buyers and sellers dealt at arm's length and that if the purchaser sought any warranties, those warranties should be negotiated and incorporated into the written contract. Additionally, purchasers were presumed to have the means and the opportunity to examine the property and judge its qualities for themselves.
>
> Recently, caveat emptor has been viewed with disfavor and many jurisdictions including Indiana have adopted the doctrine of implied warranty of habitability for the purchase of a new home from a builder-vendor. In part, this is due to a recognition of the sale of goods concept [].

We find that the application of the common law principle appears to be diminishing and our courts seem to be slowly abandoning this principle. Here, the sale was in respect to personal property and not real property, and in this regard, we find that the Indiana Uniform Commercial Code (U.C.C.) would be more appropriate to determine the issue before us. As revealed by the record, the sale of the chest of drawers constituted a contract of sale by definition under the U.C.C. Specifically, Ind. Code § 26-1-2-106 provides in part that:

> []unless the context otherwise requires, "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (I.C. 26-1-2-401). A "present sale" means a sale which is accomplished by the making of the contract.

Although there was no written contract between Trisler and Carter for the sale of the item, the U.C.C. provides that an action for a sale of goods contract that is below $500 is still enforceable under the U.C.C. even though it is not in writing. *See* I. C. § 26-1-2-201. Furthermore, we note that the U.C.C. gives the buyer the right to revoke his acceptance of the goods. "Revocation has the effect of permitting the buyer to avoid his obligation to pay for the previously accepted goods (or to have his payment returned) if he returns the goods to the seller." *Agrarian Grain Co., Inc. v. Meeker*, 526 n.E.2d 1189, 1191 (Ind. Ct. App. 1988). Specifically, I. C. § 26-1-2-608 provides that:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonally cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Here the record indicates that Carter and his wife purchased the chest of drawers for his sister-in-law who was living in a nursing home and was suffering from Alzheimer's. After he had taken the chest of drawers home, he realized the chest had nails sticking out through the back, and Carter felt that it would be unsafe for his sister-

6

in-law.  We find that the chest of drawers did not conform to what Carter initially had intended to use the chest of drawers for and as such, it substantially impaired its value.

However, even though we conclude that the chest of drawers is non-conforming pursuant to the statute, Carter is not entitled to revoke his acceptance.  Indiana Code section 26-1-2-608(1)(a) does not apply because Carter did not accept non-conforming goods on the assumption the non-conformity would be cured.  The fact that Carter was able to discover the defect upon opening the drawers of the chest while cleaning it belies the difficulty of discovering the non-conformity and there is no allegation that Trisler in any way kept Carter from inspecting the chest of drawers prior to his purchase of it.  Therefore, I.C. § 26-1-2-608(1)(b) also does not apply to allow Carter to revoke his acceptance of the chest of drawers.  Failing a legitimate reason to revoke his acceptance, the timeliness of Carter's attempted revocation pursuant to I.C. § 26-1-2-608(2) is not at issue.[1]  Therefore, we conclude that the trial court erred in entering judgment for Trisler and we reverse its decision.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in ordering Trisler to reimburse Carter the purchase price of the chest of drawers.

---

[1] Additionally, there is no allegation that the filing cabinet, the purchase price of which Trisler was also ordered to refund, was non-conforming in the first place.  It appears the filing cabinet was too big for Carter to transport on the day of purchase and that he thereafter simply changed his mind about taking it from the store.  I.C. § 26-1-2-608 therefore does not come into play.  Carter, having paid for the item and therefore accepted it, had no right to reject or revoke his acceptance of it.  *See McClure Oil Corp. v. Murray Equip., Inc*., 515 N.E.2d 546, 552 (Ind. Ct. App. 1987) ("Once the buyer accepts the goods, the buyer is precluded from rejecting them.").

Reversed.

KIRSCH, J. and ROBB, C. J. concur