**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

**JANET A. MCSHARAR**
**ALBERT BARCLAY WONG**
**JENNIFER L. STRANGE**
Harrison & Moberly, LLP
Indianapolis, Indiana



FILED

Jan 30 2014, 7:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LINCOLNSHIRE HEALTHCARE OPERATIONS COMPANY, LLC, LINCOLNSHIRE HEALTH CARE CENTER, INC., and TENDER LOVING CARE MANAGEMENT, INC., | ) ) ) ) ) |
| Appellants-Defendants, | ) ) |
| vs. | ) No. 45A05-1306-CT-276 |
| | ) |
| THE ESTATE OF DORA BERRY, by Personal Representative RITA CLAXTON, | ) ) ) |
| Appellee-Plaintiff. | ) ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John M. Sedia, Judge
Cause No. 45D01-1301-CT-20

**January 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Lincolnshire Healthcare Operations Company, LLC ("Lincolnshire Operations"), Lincolnshire Health Care Center, Inc. ("Lincolnshire Care Center"), and Tender Loving Care Management, Inc. ("Tender Loving Management") (collectively, "Lincolnshire") were sued by the Estate of Dora Berry ("the Estate") for negligent nursing care resulting in wrongful death. Lincolnshire moved to compel the Estate to participate in arbitration. The trial court denied Lincolnshire's motion. Lincolnshire now appeals.

We reverse and remand for further proceedings.

**Issue**

Lincolnshire raises one issue for our review, which we restate as whether the trial court erred when it concluded that the agreement between Lincolnshire and the decedent was sufficiently ambiguous as to preclude Lincolnshire from enforcing the agreement's arbitration provision.

**Facts and Procedural History**

On February 16, 2011, Dora Berry ("Berry"), through her daughter, Rita Claxton[1] ("Claxton"), entered into a Facility Admission Agreement ("the Agreement") for nursing care for Berry with an organization named in the Agreement only as Lincolnshire.[2] In the period

---

[1] At the time of the Agreement's execution, Claxton's last name was Griggy. Because the Complaint and all other documents filed in the trial court bear the name Claxton, we use that name in this opinion.

[2] Indiana Code section 16-36-1-5 provides that an adult child, among others, may serve as a health care representative for purposes of consenting to care for an individual incapable of consenting to medical treatment. The parties do not dispute that Claxton was acting in this capacity on Berry's behalf.

2

between February 16, 2011 and August 11, 2011, Berry was a patient at Lincolnshire Care Center, a nursing home Lincolnshire Operations operated.

On August 11, 2011, Berry died.

On January 16, 2013, the Estate filed suit against Lincolnshire, alleging that while Berry was a patient at Lincolnshire Care Center, healthcare providers and other agents were negligent in their provision of care to Berry, which negligence was the proximate cause of various injuries to Berry and, eventually, Berry's death. The Estate filed an amended complaint on January 18, 2013.[3] On February 27, 2013, the Estate filed its second amended complaint, which further specified that Lincolnshire Care Center was operated by Lincolnshire Operations. On March 8, 2013, the Estate further limited the scope of its claims, voluntarily seeking the dismissal of a hospital from the lawsuit; the trial court granted this motion on March 12, 2013.

On March 14, 2013, Lincolnshire filed a motion to compel arbitration ("the motion to compel"). In its motion, Lincolnshire argued that Berry, through her attorney-in-fact, had agreed to mediation and/or arbitration of any claims. Lincolnshire thus requested that the trial court stay the proceedings and order the Estate to engage in mediation and arbitration, as provided for in the Agreement.

On April 23, 2013, the trial court conducted a hearing on the motion to compel. After the hearing and briefing from the parties, on June 4, 2013, the trial court entered its order denying the motion to compel.

---

[3] The changes to the amended complaint are not material to this Court's resolution of the instant appeal.

This appeal ensued.

## Discussion and Decision

In its appeal, Lincolnshire contends that the trial court erred when it denied the motion to compel.

The Indiana Code provides that written agreements to submit to arbitration are valid and enforceable, except where grounds exist for revocation of any contract. Ind. Code § 34-57-2-1(a). Arbitration is initiated by written notice by either party. I.C. § 34-57-2-2. If a party seeks arbitration, and the other party refuses to arbitration, the party seeking arbitration may move a trial court to compel participation in the arbitration proceeding, and, where arbitration is ordered, the underlying action at the trial court must be stayed. I.C. § 34-57-2-3(a) & (d).

We review de novo appeals from the grant or denial of a motion to compel arbitration. Brumley v. Commonwealth Bus. College Educ. Corp., 945 N.E.2d 770, 775 (Ind. Ct. App. 2011). Both Indiana and federal law recognize a strong public policy favoring enforcement of arbitration agreements. Safety Nat. Cas. Co. v. Cinergy Corp., 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005), trans. denied. A party seeking to compel arbitration must satisfy two elements. Id. First, the party must demonstrate that there is an enforceable agreement to arbitrate the dispute. Id. Second, the party must prove the disputed matter is the type of claim that the parties agreed to arbitration. Id. Once the party seeking arbitration has carried its burden of proof, the trial court must compel arbitration. Id. (citing, inter alia, I.C. § 34-57-2-3(a)).

4

Our standard of review is altered in this case by the absence of an appellee's brief from the Estate. "An appellee who does not respond to the appellant's allegations of error on appeal runs a considerable risk of reversal." Trisler v. Carter, 996 N.E.2d 354, 356 (Ind. Ct. App. 2013). We do not undertake the burden of developing arguments for the appellee. Damon Corp. v. Estes, 750 N.E.2d 891, 892-93 (Ind. Ct. App. 2001). Where an appellee's brief has not been submitted, the appellant need only demonstrate prima facie reversible error, that is, error "'at first sight, on first appearance, or on the face of it.'" Id. at 893 (quoting Hill v. Ramey, 744 N.E.2d 509, 511 (Ind. Ct. App. 2001)).

> Here, the Agreement provides:
>
> This AGREEMENT is made by and between Lincolnshire (hereinafter referred to as the "Facility") and Dora Berry (hereinafter referred to as the "Resident"), Rita Griggy, the Resident's Legal Representative … and the Resident's Health Care Representative.
>
> ***
>
> Any dispute or other matters in question arising out of or relating to the Resident's receipt of care and services pursuant to this Agreement that the parties are unable to resolve through negotiation, the parties agree in good faith to attempt to settle the dispute by mediation…before resorting to arbitration.
>
> ***
>
> Any disputes [or] other matters in question arising out of or related to the Resident's receipt of care and services pursuant to this Agreement that are not settled by mediation within 60 days after a mediator is appointed are subject to binding Arbitration….
>
> The Resident and Legal Representative understand and agree that by entering into this Agreement they are giving up and waiving the constitutional right to have any claim decided in a court of law before a judge and jury.

(App'x at 33, 40-41.)

5

Looking to the language of the Agreement, the trial court concluded that the Agreement bound Berry and Claxton—and thus, the Estate—to its terms. However, the trial court found the Agreement ambiguous with respect to the identity of the other party.

A contract is ambiguous only if reasonable persons would differ as to the meaning of its terms. Oxford Financial Group, Ltd. v. Evans, 795 N.E.2d 1135, 1142 (Ind. Ct. App. 2003) (citing Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind. 2002)). Where a contract is unambiguous, the court must give effect to the intentions of the parties "as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." Id.

Where a contract is by its terms ambiguous, that ambiguity may be patent or latent. A patent ambiguity "is apparent on the fact of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning." Id. at 1143. Extrinsic evidence may not be used to explain a patent ambiguity. Id. A latent ambiguity "does not emerge until one attempts to implement the words as directed in the instrument. Extrinsic evidence is admissible to explain a latent ambiguity." Eckart v. Davis, 631 N.E.2d 494, 497-98 (Ind. Ct. App. 1994). Generally, an ambiguous contract is construed against the party that drafted the agreement. Id. at 498.

Here, the trial court concluded:

8. It is impossible for the Court to determine, under the four corners of the Agreement, the entity that is identified by the worlds "Lincolnshire" and "Facility." The surrounding circumstances can be used to ascertain the intent of the parties only to a limited degree: obviously, [Berry] and [Claxton] sought to admit [Berry] for nursing home care, and, it is equally obvious, whomever [sic] was going to provide nursing home care sought to have any

6

dispute (other than fees for payment) resolved through arbitration. This is still not enough to ascertain who was supposed to provide the care to [Berry] and to whom [Berry] and [Claxton] were bound to arbitrate.

9. The Court is not willing to enforce and agreement that does not state with sufficient clarity all the parties who are bound by it and who will benefit from it.

(App'x at 8, 9.)

Because the Agreement did not specify in full the name of any of the parties seeking to enforce the arbitration provisions of the Agreement, the trial court refused to compel arbitration. That is, the trial court concluded that the ambiguity associated with the name, "Lincolnshire," in the Agreement was a patent ambiguity not susceptible to proof by extrinsic evidence.

We disagree.

Assuming that the Agreement was ambiguous, any such ambiguity was latent—that is, the Agreement's terms are not internally contradictory, but rather are unclear only in application. Yet the Estate's Second Amended Complaint alleged that Lincolnshire Care Center was administered by Lincolnshire Operations. And Claxton, in an affidavit submitted in opposition to Lincolnshire's motion to compel arbitration, averred that she signed the Agreement at Lincolnshire Care Center. (App'x at 69.) That is, extrinsic evidence established that Claxton, serving as Berry's health care representative, signed the Agreement with Lincolnshire. The trial court's conclusion that it was impossible from the terms of the Agreement to determine to what "Lincolnshire" referred is thus prima facie error.

7

**Conclusion**

The trial court erred when it concluded that the arbitration agreement was unenforceable because of ambiguity. We accordingly reverse the trial court's decision and remand for further proceedings.

Reversed and remanded for further proceedings.

FRIEDLANDER, J., and KIRSCH, J., concur.